# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARISSA A. ACKERMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-2718 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

## MEMORANDUM

JOHN R. PADOVA, Sr. J

August 1st, 2011

    Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 14) and defendant's response thereto (Doc. No. 15), the court makes the following findings and reaches the following conclusions:

    1.  On January 22, 2008, Larissa A. Ackerman ("Ackerman") protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433; 1381-1383f, alleging an onset date of November 30, 2003. (Tr. 110-20). Throughout the administrative process, including a hearing held on July 1, 2009 before an ALJ, Ackerman's claims were denied. (Tr. 7-19; 20-43; 49-58). After the Appeals Council denied review, pursuant to 42 U.S.C. § 405(g), Ackerman filed her complaint in this court on June 7, 2010. (Tr. 1-3; Doc. No. 1).

    2.  In her July 21, 2009 decision, the ALJ concluded, *inter alia*, that: (1) Ackerman had a severe mood disorder and back disorder; (2) her impairments did not meet or equal a listing; (3) she had the residual functional capacity ("RFC") to perform sedentary work with an at-will sit/stand option, various postural limitations, and only simple, repetitive tasks, with only occasional contact with the public or co-workers in a work setting with only occasional changes; (4) she could perform work existing in significant numbers in the national economy; and (5) Ackerman was not disabled. (Tr. 9 Finding 3; 13 Finding 4; 15 Finding 5; 18 Finding 10; 19 Finding 12).

    3.  This Court has plenary review of legal issues, but it reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by

substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

    4.  Ackerman raises three arguments in which she alleges that the determinations by the ALJ were legally insufficient or not supported by substantial evidence. These arguments are addressed below. However, upon independent consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

    A.  First, Ackerman contends that the ALJ failed to give proper weight to two forms from treating physicians indicating disabling limitations. Specifically, Ackerman believes that the ALJ should have given full credit to: (1) the job capabilities and restrictions questionnaire from treating neurologist Dr. Leonard Bruno indicating, *inter alia*, that Ackerman could only sit two hours out of a day and stand for two hours out of a day, had severe postural and manipulative limitations, could only occasionally lift 10 pounds, and could not work; and (2) the mental impairment questionnaire from treating psychiatrist Dr. William S. Greenfield indicating, *inter alia*, that Ackerman had a marked limitation in the area of concentration, persistence or pace and had experienced three episodes of decompensation in one year each lasting at least two weeks. (Tr. 496-499; 529-32). The opinions found in these two questionnaires regarding RFC limitations, the ultimate disability determination, and whether Ackerman met or equaled a listing are all questions reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e); 416.927(e); S.S.R. 96-5p. The opinions of treating physicians thereon are not entitled to controlling weight as the sources of such opinions are not to be given any special significance. Id. Regardless, an opinion of a treating physician is only entitled to controlling weight on other issues if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

    After discussing all of the pertinent evidence on Ackerman's mental and physical impairments, the ALJ stated that she had given significant weight to the medical examinations and diagnostic tests from these two physicians and the others in the record and explained that these records gave a more accurate picture of the claimants's functional capacity than the two questionnaire forms. (Tr. 10-13; 16-17). After reviewing the record, I conclude that the ALJ's decision to discount these two questionnaires was supported by substantial evidence. For example, Dr. Bruno's questionnaire on Ackerman's physical limitations was not consistent with the numerous MRI and X-ray results showing only slight, minimal and mild issues, or the physical RFC assessment from the consultative examiner. (Tr. 257; 258; 302-05; 308; 317; 450-51; 468-74; 524-25). Dr. Greenfield's questionnaire was not consistent with his own treating notes or the mental RFC assessment and psychiatric review technique from the consultative examiner. (Tr. 475-91; 500-23). Furthermore, both of these questionnaires are basically check-box forms devoid of any supporting medical findings, making them "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). As a

result, Ackerman's argument that the ALJ erroneously failed to give these forms great weight must fail.

      B.  Second, Ackerman agues that the ALJ failed to consider the side-effects of her medication. Ackerman states that she has been prescribed various narcotic pain medications which, Dr. Greenfield opined by checking the corresponding box on his mental impairment questionnaire, caused "significant fatigue or drowsiness." (Tr. 532). The ALJ did not include such limitations in the RFC. As discussed above, it was reasonable for the ALJ to give Dr. Greenfield's questionnaire form limited weight. There is no significant medical evidence in the record to support Dr. Greenfield's opinion on this issue and he does not provide any support for the conclusion in his questionnaire. (Id.). In determining a claimant's RFC, the ALJ is only required to include limitations credibly established by medical evidence and not every limitation alleged. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Moreover, "'[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'" Id. at 555 (quoting Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)). In light of the dearth of supportive medical records, the ALJ's decision not to include medication side-effects in Ackerman's RFC assessment was legally supported.

      C.  Third, Ackerman suggests that the ALJ provided an incomplete hypothetical question to the vocational expert ("VE"), thus rendering the VE's testimony unreliable. Specifically, Ackerman suggests that the ALJ failed to relay to the VE all of her non-exertional limitations arising from her mental impairment and her medication side-effects. It is not completely clear from her brief what non-exertional limitations Ackerman believes the ALJ omitted,[1] however, the two she specifically mentions are a need to take two naps during the day and Dr. Greenfield's opinion (in the form of a check mark in the appropriate column) that she would be absent from work several times each month. (Tr. 499). This argument is very similar to Ackerman's previous argument and it fails for the same reasons. As with the RFC assessment, a hypothetical question to the VE need only include limitations credibly established by medical evidence. Rutherford, 399 F.3d at 554. Ackerman fails to support her argument with evidence showing a need for such restrictions and, as discussed, the ALJ reasonably discounted the conclusions found in Dr. Greenfield's questionnaire due to the lack of supportive evidence. Moreover, the ALJ, both in her RFC assessment and hypothetical question, did specifically consider Ackerman's non-exertional limitations and limited her to a range of sedentary work involving simple repetitive tasks, only occasional contact with the public or co-workers, with only occasional changes to the work setting. (Tr. 15 Finding 5). As a result, I conclude that the ALJ's hypothetical question to the VE was supported by substantial evidence.

      5.  After carefully reviewing all of the arguments and evidence, I find that the

---

[1] Ackerman simply states that "[s]urely there are many other impairments caused by plaintiff's mental condition as well as the effects of medications which should have been included in the hypothetical" and that "[i]t is clear from a reading of the record that ALJ [sic] did not address many of the plaintiff's non-exertional limitations." (Doc. No. 14, pg. 16).

ALJ's conclusion that Ackerman was not disabled was legally sufficient and supported by substantial evidence. Therefore, Ackerman's request for relief must be denied and the decision must be affirmed.[2]

    An appropriate Order follows.

---

[2] Ackerman also suggests in her brief that the ALJ did not consider her impairments in combination when determining whether she met or equaled a listing. The ALJ's decision shows that this assertion is incorrect. While discussing whether Ackerman's mental impairment met listing 12.04 (affective disorders), the ALJ specifically mentioned how Ackerman's back pain affected her ability to perform activities of daily living. (Tr. 14-15).